

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JOHN HOLLOWAY,　　　　　　　　　CIVIL ACTION
　　　　　Plaintiff　　　　　　　　NO. CV08-0464-A

VERSUS

TOWN OF SIMMESPORT, et al.,　　　JUDGE DEE D. DRELL
　　　　　Defendants　　　　　　　MAGISTRATE JUDGE JAMES D. KIRK


## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a motion to dismiss[1] (Doc. 5) filed by defendants Town of Simmesport and Gerald Jackson ("Jackson")(Chief of Police for the Town of Simmesport, sued in both his individual and official capacities), in response to a civil rights complaint filed on April 3, 2008,[2] pursuant to 42 U.S.C. § 1983 by plaintiff John Holloway ("Holloway"). Holloway contends that Officer Juan Leger, employed by the Simmesport Police Department, illegally arrested him, used excessive force to do so, and illegally seized his car. Holloway contends Chief Jackson and the Town of

---

[1] Defendants' motion to dismiss does not address Holloway's claims against Juan Leger ("Leger"), a police officer employed by the Town of Simmesport and supervised by Chief Jackson. Holloway's claims against Leger include Section 1983 and state law claims for wrongful arrest, illegal seizure of property, use of excessive force, assault and battery, and conversion.

[2] Holloway's actions against "Officer Roe" and "Officer Doe" were dismissed for failure to effect service (Doc. 7).

Simmesport failed to properly screen, train, and discipline their police officers. Holloway also alleges state law claims for wrongful arrest, assault, battery, and conversion of Holloway's personal property, and the vicarious liability of Chief Jackson and the Town of Simmesport for Leger's actions. For relief, Holloway asks for monetary damages.

<u>Facts and Procedural History</u>

Holloway alleges in his complaint that, on October 27, 2007, he purchased a vehicle in Pineville, Louisiana, and was driving it home when the vehicle suffered a mechanical problem which forced Holloway to stop on the shoulder of La. Highway 1. Holloway alleges that Officer Leger and other unknown officers pulled up behind Holloway's parked vehicle in their police cruiser, and a friend of Holloway's, whom Holloway had called to assist him, pulled up soon thereafter. Holloway alleges the officers did not allow the friend to approach, ordered Holloway from his car, called for police back-up which soon arrived, and checked Holloway's bill of sale for the vehicle.

Holloway further contends that, while an officer checked the bill of sale, Officer Leger screamed profanities at Holloway and threatened to have Holloway's car towed to Houston. Holloway responded, "Go ahead and tow it and see what happens," at which point he was arrested and charged with "public intimidation." Holloway also contends Officer Leger used physical force which was

2

excessive in effecting the illegal arrest. Holloway contends he was then detained in the back of the police car for thirty to forty minutes. While he was being detained, Holloway's wife arrived to check on him, and was told by the officers that they had stopped to assist Holloway, but that he had been disrespectful to them, so they had arrested him and were going to be transported to Marksville, where he would be jailed until the next Monday.

Holloway alleges his car was then towed and impounded and he was transported to the Simmesport Town Hall, where he was being processed for booking in the Avoyelles Parish Jail. At that time, Chief Jackson arrived and released Holloway from police custody, but refused to release Holloway's vehicle. Holloway contends he had to pay $100 to have his car released from the impound lot.

Finally, Holloway contends that Chief Jackson had been previously warned about improper conduct by Officer Juan Leger and others, but had taken no action to insure that Leger discontinued the use of excessive force, and that Jackson failed to properly train and supervise the officers under his command.

Defendants filed a motion to dismiss the action pursuant to Fed.R.Civ.P. rule 12(b)(6), for failure to state a claim on which relief may be granted and alleging the defense of qualified immunity (Doc. 5). Holloway filed a brief in opposition to the motion to dismiss.

Defendants' motion to dismiss is now before the court for

disposition.

## Law and Analysis

### Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted. Tanglewood East Homeowners v. Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th.Cir. 1988); Doe v. U.S. Dept. of Justice, 753 F.2d 1092, 1101 (D.C.Cir. 1985). For the purposes of such a motion, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader. Doe, 753 F.2d at 1101. A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts. Crowe v. Henry, 43 F.3d 198, 203 (5th Cir. 1995). In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Hirras v. National Railroad Passenger Corp., 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732, 129 L.Ed.2d 855 (1994); Doe, 753 F.2d at 1102. On a motion to dismiss, it is presumed that general allegations embrace the specific facts that are necessary to support the claim. National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994), citing Lujan v.

*Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992).

## Qualified Immunity

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well established law. *Richardson v. Oldham*, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein. Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

Invocation of the qualified immunity defense shifts the burdens of proof in federal civil rights lawsuits brought against public officials for actions or omissions attending their performance of official duties:

> "The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law."

*Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).

5

The defense of qualified immunity may be considered on a motion to dismiss. In order to survive a motion to dismiss, a plaintiff's allegations must portray an objectively unreasonable violation of a clearly established right. Shipp, 199 F.3d at 261.

The first inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. Hope, 122 S.Ct. at 2513. If it is established that the defendants participated in constitutionally impermissible conduct, the defendants may nevertheless be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Hope, 122 S.Ct. at 2515. For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. In the light of pre-existing law, the unlawfulness must be apparent. However, officials can be on notice that their conduct violates established law even in novel factual circumstances. The salient question the court must ask is whether the state of the law at the time of the alleged incident gave the officers fair warning that their alleged conduct was unconstitutional. Hope, 122 S.Ct. at 2516.

The qualified immunity doctrine does not protect an official whose subjective intent was to harm the plaintiff, regardless of

the objective state of the law at the time of his conduct. <u>Douthit</u> <u>v. Jones</u>, 619 F.2d 527, 533 (5th Cir. 1980). A party seeking to avoid a qualified immunity defense must prove that the official either actually intended to do harm to him, or took an action which, although not intended to do harm, was so likely to produce injury that the harm can be characterized as substantially certain to result. <u>Douthit</u>, 619 F.2d at 533.

Finally, it is noted that the defense of qualified immunity is not available to a defendant sued in his official capacity. A suit brought against a defendant in his official capacity is, effectively, a suit against the governmental unit that employs the defendant. <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55 (1978). Municipalities are not entitled to qualified immunity, <u>Owen v. City of Independence, Mo.</u>, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415 (1980), nor is a sheriff or police or police chief sued in his official capacity, <u>Rodgers v.</u> <u>Jabe</u>, 43 F.3d 1082, 1089 (6th Cir. 1995); <u>Ruehman v. Sheahan</u>, 34 F.3d 525, 527 (7th Cir. 1994).

Therefore, neither Chief Jackson in his official capacity nor the Town of Simmesport is entitled to qualified immunity.

<u>Town of Simmesport and Chief Jackson in his Official Capacity</u>

Defendants contend Holloway failed to state a claim cognizable under Section 1983 against Chief Jackson in his official capacity and the Town of Simmesport because he has not alleged a

constitutional violation that was caused through a municipal policy or custom.

The heightened pleading requirement does not apply in civil rights cases brought against municipalities, of against individuals sued in their official capacities. <u>Schultea</u>, 47 F.3d at 1432, citing <u>Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164, 113 S.Ct. 1160 (1993); <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 689 n.55, 98 S.Ct. 2018, 2035 n.55 (1978).

In <u>Monell</u>, 436 U.S. at 689, 98 S.Ct. at, 2035, the Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of Section 1983, and that, since there is no respondeat superior liability under Section 1983, a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor.

The Supreme Court has also held that a plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal "policy" or "custom" that caused the plaintiff's injury. Locating a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. <u>Board of Cty. Comm'rs of Bryan Cty. v. Brown</u>, 520 U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997).

Municipal liability under Section 1983 attaches where a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question. Therefore, municipal liability may attach to a *single decision* to take unlawful action made by a municipal policymaker. Pembauer v. City of Cincinnati, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300 (1986). Also, Bd. of Cty. Comm'rs of Bryan County v. Brown, 520 U.S. 397, 117 S.Ct. 1382 (1997); Burge, 187 F.3d at 470-471. Where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken *only once* or to be taken repeatedly. Pembauer, 475 U.S. at 481, 106 S.Ct. at 1299.

The plaintiff must also show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Accordingly, proof that a municipality's authorized decision maker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Board of Cty. Comm'rs of Bryan Cty., 520 U.S. at 404, 117 S.Ct. at 1388-90.

A cause of action for "failure to train" under §1983 depends on a showing of (1) a deliberately indifferent policy of training that (2) was the closely related cause of the violation of the

9

plaintiff's federally protected rights. <u>Doe v. Taylor Independent</u> <u>School Dist.</u>, 15 F.3d at 453. A plaintiff must prove that a deficiency in the training program is closely related to the ultimate injury. <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

Regarding the element of causation, an isolated incident is not enough to show that a policy or custom exists. Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy. In order to be a policy, inadequate training must be a product of a conscious choice. <u>Hood v. Itawamba County, Miss.</u>, 819 F.Supp. 556, 564 (N.D.Miss. 1993), citing <u>Palmer v. City of San Antonio</u>, 810 F.2d 514, 516 (5th Cir. 1987), and <u>Grandstaff v. City of Borger, Tex.</u>, 767 F.2d 161, 169 (5th Cir. 1985). The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act, where the policy relied upon is not itself unconstitutional. <u>Thompkins</u>, 828 F.2d at 304. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the policymaker, for the officer's shortcomings may have resulted from factors other than a faulty training program; adequately trained officers occasionally make mistakes.

In <u>Burge v. Parish of St. Tammany</u>, 187 F.3d 452, 471 (5th Cir. 1999), the Fifth Circuit explained that the official policy requirement may be met in at least three different ways: (1) when

the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy, (2) where no official policy was announced or promulgated but the action of the policymaker itself violated a constitutional right; and (3) even when the policymaker fails to act affirmatively at all, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

First, it is noted that defendants have not argued that Chief Jackson is not the policy-maker for the Town of Simmesport's police department.

Holloway contends in his complaint (Doc.1) and statement of facts (Doc. 10) that he was arrested without probable case and with excessive force due to the fact the officers were not properly screened, trained, or disciplined by Chief Jackson. Holloway further alleges that Chief Jackson is aware from previous complaints that Leger and other officers make improper arrests without probable cause and use excessive force, but failed to take action to correct their behavior. Therefore, Holloway is alleging repeated misconduct on the part of Leger and other officers that Chief Jackson knew about and did not correct, which could

constitute a custom, practice, or policy or permitting or disregarding arrests made without probable cause and the use of excessive force. Assuming these allegations are correct for purposes of this motion, Holloway meets the third method of establishing a policy outlined in Burge - where the policymaker fails to act affirmatively, if the need to take some action to control the agents of the local governmental entity is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need. Whether this amounts to a custom, practice, or policy of deficient training/disciplining for the officers is not clear at this point.

The claim, set forth in the complaint, that Chief Jackson and the Town of Simmesport failed to adequately screen their employees, appears to have been abandoned, since it has not been argued in Holloway's statement of facts and brief in opposition to the motion for summary judgment and there are no facts alleged to support it. Therefore, defendants' motion to dismiss should be granted on the issue of "failure to screen employees."

Therefore, resolving any ambiguities in the allegations in the light most favorable to the plaintiff, and assuming plaintiff's general allegations embrace the specific facts that are necessary

to support his claims,[3] Holloway has alleged a policy, practice, or custom of deficient training/disciplining through Chief Jackson's failure to correct officers' practice of using excessive force and/or making arrests without probable cause, which resulted in the illegal arrest of and use of excessive force against Holloway.[4]

Therefore, defendants' motion to dismiss should be denied as to Chief Jackson in his official capacity and the Town of Simmesport as to the failure to train/discipline claim.

Chief Jackson in His Individual Capacity

Defendants next contend that Chief Jackson is entitled to qualified immunity in his individual capacity because Holloway alleges only the vicarious liability of Chief Jackson for the actions of his Officer Leger under Section 1983, fails to allege a causal connection between Chief Jackson and the alleged constitutional violations, and fails to allege that Chief Jackson was deliberately indifferent.

1.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable

---

[3] As stated above, neither the qualified immunity defense nor the heightened pleading requirement apply to the Town of Simmesport or Chief Jackson in his official capacity.

[4] Defendants' reliance on Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532 (5th Cir. 1996), is misplaced, since that case did not involve an allegation of uncorrected repetitive misconduct.

in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); Thompkins, 828 F.2d at 303.

First, Holloway only alleges the vicarious liability of Chief Jackson and the Town of Simmesport under state law, not Section 1983. Therefore, defendants' motion to dismiss Holloway's Section 1983 claims against Chief Jackson for vicarious liability should be denied as moot.

## 2.

However, Holloway alleges the liability of Chief Jackson in his individual capacity for failure to train/supervise his officers which resulted in Holloway's illegal arrest and the use of excessive force against Holloway by Officer Leger, and for refusing to release Holloway's impounded car.

In examining Chief Jackson's defense of qualified immunity, the court must first determine whether Jackson violated constitutional rights were clearly established at the time of the

14

incident and, if so, (2) whether Jackson's conduct of the was objectively unreasonable in the light of that clearly established law.

It was well established in 2007 that a police officer may arrest a person only if he has probable cause to believe that person committed a crime. See Tennessee v. Garner, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699 (1985). Also, it was clearly established by the Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989), that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Saucier, 533 U.S. at 201-202, 121 S.Ct. at 2156. Therefore, Holloway has alleged the violations of constitutional rights that were clearly established in 2007.

The law as to constitutionally deficient training has been established since at least 1989, as discussed above. See City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (1989). Therefore, Holloway has alleged the violation of a well-established constitutional right which a reasonable officer would have been aware of in 2007. Since Holloway's allegation that he was arrested without probable cause because Chief Jackson failed to properly train or supervise them is accepted as true for purposes of this motion, Holloway has alleged the violation of a well-established constitutional right for which Jackson is not entitled to qualified immunity.

15

With regard to Holloway's cause of action that the false arrest occurred because Chief Jackson failed to train/supervise his officers, as stated earlier, assessing an individual supervisor's liability under §1983 depends on a showing of a deficiency in the training program is closely related to the ultimate injury. See City of Canton, Ohio v. Harris, 489 U.S. 378, 109 S.Ct. 1197 (1989). Holloway contends Chief Jackson was aware his officers were using excessive force and otherwise conducting themselves inappropriately due to prior complaints made to him about the officers, but failed to take corrective action. As a result, Officer Leger wrongfully arrested Holloway and used excessive force against him. Therefore, Holloway has alleged a Section 1983 claim against Chief Jackson in his individual capacity for failure to train or supervise his officers which resulted in Holloway's arrest without probable cause, and Jackson's motion to dismiss should be denied on that claim.

Next, the court must determine whether Holloway has alleged facts to show that the amount of force used by the officers was objectively unreasonable. In gauging the objective reasonableness of the force used by a law enforcement officer, the court must balance the amount of force used against the need for that force. Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996). The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed. Ikerd, 101

F.3d at 434. Also, a plaintiff asserting an excessive force claim is required to show he suffered at least some form of injury. The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed. Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001); Williams v. Bramer, 180 F.3d 699, 703-704 (5th Cir.), clarified on rehearing, 186 F.3d 633 (5th Cir. 1999). Since Holloway has not alleged a physical injury of any kind, he has not alleged a claim for the use of excessive force. Therefore, Holloway has not alleged a Section 1983 claim against Chief Jackson for a constitutionally deficient program/policy of training or supervising his employees which resulted in the use of excessive force against Holloway, and Jackson's motion to dismiss should be granted on that claim.

3.

Holloway also claims he had to pay $100 to have his car released, even though he was released and the charges against him were dropped the same day his car was impounded, because Chief Jackson refused to release his car, also.

The property Holloway was deprived of (his car) can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment, and its loss is worthy of redress, only if the loss implicates constitutional rights. Parratt v. Taylor, 451 U.S. 527, 107 S.Ct. 1908 (1981). The Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may

17

already be administered by the States. See <u>Baker v. McCollan</u>, 443 U.S. 137, 99 S.Ct. 2689 (1979). A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must by intentional and plaintiff must allege specific facts which support such a conclusion. <u>Daniels v. Williams</u>, 474 U.S. 327, 328, 106 S.Ct. 662 (1986). Moreover, in instances where intentional deprivation occurs, where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. <u>Hudson v. Palmer</u>, 468 U.S. 517, 104 S.Ct. 3194, 3204 (1984); <u>Lewis v. Woods</u>, 848 F.2d 649 (5th Cir. 1988); <u>Marshall v. Norwood</u>, 741 F.2d 761, 764 (5th Cir. 1984).

Louisiana law provides Holloway the opportunity to seek redress for his loss - the money he was required to pay to get his car back. See La.C.C. art. 2315. Accordingly, Holloway's allegations show that claim against Chief Jackson in his individual capacity, concerning the impoundment of his car, is not cognizable under §1983. However, Holloway has alleged a state law claim pursuant to La.C.C. art. 2315 against Chief Holloway in his individual capacity.

Therefore, defendants' motion to dismiss Holloway's Section 1983 claim for conversion against Chief Jackson in his individual capacity should be granted.

State Law Claims

Holloway alleges that Jackson and the Town of Simmesport are

18

vicariously liable, as Leger's employers,[5] for the wrongful arrest, assault, battery, and conversion of Holloway's personal property committed by Leger.

Generally, am employer is considered vicariously liable for torts committed by an employee while the employee is in the course and scope of his employment duties. <u>Baumeister v. Plunkett</u>, 95-2270 (La. 1996), 673 So.2d 994, 996; <u>Orgeron v. McDonald</u>, 93-1353 (La. 7/5/94), 639 So.2d 224, 226. An employee's conduct is considered to fall within the course and scope of his employment duties if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. In order for the employer to be held vicariously responsible for the torts of his employee, the employee's conduct must be so closely connected in time, place, and causation to the employee's employment duties that is constitutes a risk of harm attributable to the employer's business.

Holloway alleges he was arrested without probable cause, or unlawfully, by Officer Leger, when Officer Leger arrested him for "public intimidation"[6] when Holloway told Leger, "Go ahead and tow

---

[5] Neither Chief Jackson nor the Town of Simmesport has denied an employer/employee relationship with Officer Leger.

[6] Under La.R.S. 14:122, the crime of public intimidation" is defined as "the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty: (1) Public

[my car] and see what happens." Louisiana state law recognizes the tort of false arrest. <u>Alvarado v. Poche</u>, 2002-2 (La. App. 3d Cir. 6/5/02), 819 So.2d 1150, 1152, writ den., 02-2212 (La. 11/8/02), 828 So.2d 1120.  In order for a plaintiff to recover for false arrest, he must prove that he was unlawfully detained by the police against his will.  Thus, two elements are required to prove a case in false arrest: (1) detention of a person, and (2) unlawfulness of the detention.  <u>Dumas v. City of New Orleans</u>, 2001-0448 (La.App. 4 Cir. 12/05/01), 803 So.2d 1001, 1003, writ den., 2002-0024 (La. 3/15/02) 811 So.2d 912, citing <u>Harrison v. State Through Dept. of Public Safety and Corrections</u>, 97-1086 (La. 12/1/98), 721 So.2d 458, 461.  Accepting Holloway's allegation, that he was arrested without probable by officers employed by Chief Jackson and the Town of Simmesport, as true for purposes of this motion, Holloway has stated a state law claim against Chief Jackson and the Town of Simmesport for vicarious liability for their employees' false arrest of Holloway and their motion to dismiss this claim should be denied.

Holloway also alleges Officer Leger used excessive force in effecting the arrest, pursuant to which he has set forth a claim for assault and battery.  Under Louisiana law, even if an officer has probable cause, the use of excessive force in effecting an arrest becomes an actionable claim for damages.  <u>Patton v. Self</u>,

---

officer or public employee. ...".

20

06-1029 (La. App. 3d Cir. 3/7/07), 952 So.2d 874, 878, and cases cited therein. Excessive force transforms ordinarily protected use of force into an actionable battery, rendering the defendant officer and his employer liable for damages. Patton, 952 So.2d at 878, and cases cited therein. Also, Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977). Moreover, in Louisiana, an individual has a right to resist an illegal arrest. However, the right to resist is only available where the arrest is illegal and is tempered by the requirement that in preventing such an illegal restraint of the person's liberty, he may use only such force as may be necessary. State v. Ceaser, 02-3021 (La. 10/12/03), 859 So.2d 639, 643. Should a police officer with no probable cause to believe that a person has committed a crime use physical violence to overcome the person's resistance, his actions constitute a battery. McDaniel v. Green, (La.App.3d Cir. 12/22/99), 755 So.2d 942, 947, rev. den., 99-1087 (La. 3/24/00), 758 So.2d 151, citing Norrell v. City of Monroe, 375 So.2d 159 (La. App. 2d Cir. 1979). White v. Morris, 345 So.2d 461 (La. 1977). Under Louisiana state law, an injury is not required to state a claim, as there is under Section 1983. See Malone v. Fields, 335 So.2d 538, 544-545 (La. App. 2d Cir. 1976). Therefore, assuming Holloway's allegations as to Leger's use of excessive force are true for purposes of this motion, Holloway has alleged a state claim against Chief Jackson and the Town of Simmesport for vicarious liability for Leger's use

of excessive force and their motion to dismiss this claim should be denied.

Finally, Holloway alleges a state law claim for conversion of his property by Chief Jackson, when he refused to return Holloway's car, forcing Holloway to pay $100.00 to get his car from the impoundment lot. The tort of conversion is grounded on the unlawful interference with the ownership or possession of a movable and is committed by the following actions: (1) acquisition of possession in an unauthorized manner; (2) removal of a chattel from one place to another with the intent to exercise control over it; (3) unauthorized transfer of possession of the chattel; (4) withholding possession from the owner; (5) alteration or destruction of the chattel; (6) improper use of the chattel; or (7) assertion of ownership over the chattel. <u>Dual Drilling Co. v. Mills Equipment Investments, Inc.</u>, 98-0343 (La. 12/1/98), 721 So.2d 853. Assuming Holloway's claim is true, that Chief Jackson withheld possession of his car from him by refusing to release his car after he was released, Holloway has alleged a state law claim against Chief Jackson for conversion and against the Town of Simmesport for vicarious liability as Jackson's employer. Therefore, defendants' motion to dismiss this claim should be denied.

4.

Finally, defendants argue that Holloway has not stated a claim

22

for defamation. However, although Holloway includes loss of reputation as an element of damages, he did not set forth a claim for defamation. Since there is no defamation claim to dismiss, defendants' motion to dismiss should be denied as moot.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' motion to dismiss should be **DENIED** as to Chief Jackson in his official capacity and the Town of Simmesport as to Holloway's claim for failure to train/discipline the officers.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss Holloway's Section 1983 claims against Chief Jackson for vicarious liability should be **DENIED AS MOOT**.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss should be **DENIED** as to Holloway's Section 1983 claim against Chief Jackson in his *individual capacity* for a failure to train or supervise his officers which resulted in Holloway's arrest without probable cause.

IT IS FURTHER RECOMMENDED that Jackson's motion to dismiss should be **GRANTED** and Holloway's action against Jackson in his *individual capacity* for a constitutionally deficient program/policy of training or supervising his employees which resulted in the use of excessive force against Holloway should be **DISMISSED WITHOUT PREJUDICE**.

IT IS ALSO RECOMMENDED that defendants' motion to dismiss

23

Holloway's Section 1983 claim for conversion against Chief Jackson in his *individual capacity* should be **GRANTED** and that claim should be **DISMISSED WITH PREJUDICE**.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss Holloway's state law claim against Chief Jackson and the Town of Simmesport for vicarious liability for the false arrest of Holloway should be **DENIED**.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss Holloway's state law claim against Chief Jackson and the Town of Simmesport for vicarious liability for Leger's use of excessive force should be **DENIED**.

IT IS FURTHER RECOMMENDED that defendants' motion to dismiss Holloway's state law claim against Chief Jackson for conversion and against the Town of Simmesport for vicarious liability as Jackson's employer should be **DENIED**.

IT IS ALSO RECOMMENDED that defendants' motion to dismiss the defamation claim should be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District

24

Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 30th day of March, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE